**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ALTAGRACIA CAMARENA**

      **VS**

 **U.S. BANK NATIONAL ASSOCIATION AS TRUSTE**
**FOR MASTR ADJUSTABLE RATEE MORTGAGES**
**TRUST 2007-1 MORTGAGE PASS-THROUGH**
 **CERTIFICATES SERIES 2007-1, ALIAS**
**OCWEN LOAN SERVICING, LLC**

## COMPLAINT

     Plaintiff, by her attorney, complains of Defendants as follows:

1.    Plaintiff is a resident of the  State of Rhode Island with an address of 142-144 Unit Street, Providence, Rhode Island.  She owns said real estate located at 142-144 Unit Street, Providence, Rhode Island.

2.    Plaintiff executed a mortgage to Mortgage Electronic Registration Systems, Inc. as Nominee for Dream House Mortgage Corporation  on October 13, 2006.   A copy is attached as Exhibit A.

3.    Defendant,  U.S. Bank National Association as Trustee for MASTR Adjustable Rate Mortgage Trust 2007-1 Mortgage Pass-Through Certificates Series 2007-1("US Bank") claims to own Plaintiff's mortgage.   There is no entity with this name, which references the securities issued by the actual trustThere is a securitized trust with the name of MASTR Adjustable Rate Mortgage Trust 2007-1, which is located and identified on the Securities and Exchange Commission Website at the following web link:

    https://www.sec.gov/Archives/edgar/data/1379905/000105640408000454/mam07001_15-2007.txt

4.    In this document filed by the depositor of the Trust with the Securities and Exchange Commission, the exact name of the trust was stated as MASTR Adjustable Rate Mortgage Trust 2007-1. A copy of this filing with the Securities and Exchange Commission is attached as Exhibit B.

5.    Defendant, Ocwen Loan Servicing, LLC ("Ocwen") is a limited liability company, organized pursuant to the laws of Delaware. It is a debt collector and asserts that it is the loan servicer for the Plaintiff's mortgage.

6.    This Court has diversity jurisdiction as the amount in controversy is greater than $75,000.00, the Plaintiff is a citizen of the State of Rhode Island all defendants are citizens or incorporated entities of different states.

7    Orlans, PC ("Orlans") on January 31, 2018  has scheduled a foreclosure sale for Plaintiff's home on March 26, 2018  at 12:00 AM, as indicated by Exhibit C.  In this letter, Orlans indicated that it intended to foreclose under power of sale for breach of condition and by entry. It also indicated that the Plaintiff may be liable to the undersigned for any deficiency. However no person signed this letter and as a result there was no undersigned person referenced in the letter.

8.    In this letter, Orlans indicated that the consumer should contact the Mediation Coordinator, which is a procedure pursuant to R.I.G.L 34-27-3.2. However no mediation notice was sent to the consumer.

9.    Plaintiff has not been mailed a default notice in the form required pursuant to the provisions of paragraph 22 of the mortgage.

10.    Before an acceleration of the loan was declared, the Lender was required to send Plaintiff a notice to her home address which specified:

    a.    the default;

    b.    the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

    c.    that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home

        d.     the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

11.    Paragraph 22 of Plaintiff's mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

12.    The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of

sale as indicated above.   Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

13.     Ocwen, through its attorney mailed Plaintiff's attorney, Shana L. Costa of Korde & Associates, P.C. ("Korde") by certified mail a letter dated June 3, 2016, which it claimed to be a default notice.  A copy is attached as Exhibit C. A copy of this letter was not deposited in the United States mail addressed to the Plaintiff at her home address by regular mail on June 3, 2016.

14.     This letter did not comply with Paragraph 22 of the mortgage.

15.     Paragraph 22 (c) of Plaintiff's mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

16.      However this letter did not specify a particular date for the cure date. Instead it stated:

DEMAND is hereby made against you to cure this default by July 3, 2016.

17.     This letter thus was not consistent with the terms of the mortgage, in that a specific cure date was not listed.

18.     The term "by" means on or before and states a time frame from the date of the letter up to and including July 3, 2016.

19.     The terms of the mortgage required the default letter to state:
**that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property**

20.     Exhibit C instead stated:

You are advised that unless the arrearage is received by the Mortgagee, c/o Korde & Associates, P.C. 321 Billerica Road, Suite 210 Chelmsford, MA

01824-4100 by July 3, 2016, the Mortgage may accelerate the payment of all sums secured by the aforesaid mortgage and may exercise all rights as set forth under the power of sale contained in said mortgage including a foreclosure sale of the mortgaged premises.

21.     Thus the Defendant by using the term by indicated that the term by meant on or before.

22.     However the reference to the Korde address added conditions that were not contained in the terms of the mortgage particularly due to the fact that the letter also indicated that Korde was moving and would have a new address of 900 Chelmsford Street, Suite 3102, Lowell, Massachusetts 01851 as of June 27, 2016.

23.     Thus the address given to cure was the wrong address.

24.     This letter also indicated that on the date that the Plaintiff sought to cure the default, she should contact Korde for the exact amount of the default.

25.     The failure of the Defendants to comply with the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

26.     The purported default letter did not state an accurate amount for the arrearage, since it included fees and expenses, which were charged due to a prior improper fees and expenses, contrary to the terms of the mortgage.


## COUNT I
## BREACH OF CONTRACT

27.     Paragraphs 1- 26 are incorporated by reference.

28.     The statutory power of sale could only be exercised pursuant to the Plaintiff being sent a default letter pursuant to the terms of the mortgage, followed by an acceleration letter and a Notice of Sale pursuant to R.I.G.L.34-27-4.

29.    Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property at any time.

30.    The actions of the Defendants constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

31.    Plaintiff's mortgage loan account has been charged unreasonable fees and expenses for the prior foreclosure attempt and for this attempt to foreclose.

32.    Plaintiff lives at this house as her only residence.

33.    She has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of her home.

34.    The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

35.    The mortgage contract in paragraph 22 incorporates the Rhode Island Statutory Power of Sale.

36.    US Bank and Ocwen violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without the lender or an agent acting on its behalf having first sent a default notice to the Plaintiff, which contained language required by the terms of the mortgage.

37.    The failure to send a default letter and subsequently mailing of a Notice of Sale  contrary to the terms of the mortgage were  actions taken contrary to the contractual and statutory obligations of the parties.

38.     The Plaintiff's mortgage loan account has been charged unreasonable fees and expenses, which will increase the cost of any loan modification which she seeks in the future.

39.    Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's mortgage.

40.    As a result of the improper and invalid attempt to exercise of the statutory power of sale and a purported  foreclosure sale due to the failure to comply with the terms of the mortgage, Plaintiff's  mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other improper charges.

41.    Plaintiff lives in the property as her sole residence. She has also incurred emotional injuries and damages due to the improper attempted foreclosure  on her home without complying with the terms of the mortgage.

42.    Due to the attempted foreclosure, she has been worried about being evicted from her home, which has caused her to lose sleep and suffer emotional distress due to the actions of the Defendant.

43.    Plaintiff has  hired  an attorney, in regard to the improper action of Defendants, which sent him a Notice of Foreclosure sale  without having complied with terms of the mortgage.

44.    Plaintiff has incurred legal fees for the prosecution of this action as a result of the breach of contract by  US Bank, whose actions were a breach of the covenant of good faith and dealing and were willful, wanton and reckless, warranting the imposition of punitive damages.

45.    Pursuant to the provisions of R.I.G.L §9-1-45, Plaintiff is entitled to attorney fees for this breach of contract.

46.    There was no justiciable basis in law or fact for the exercise of the statutory power of sale without complying with the terms of the mortgage.

WHEREFORE, Plaintiff demands the following relief:

a.    Damages against US Bank and  Ocwen for failure to comply with the terms of the mortgage.

b.    Damages against US Bank and  for legal fees and actual damages arising from the breach of contract.

c.     Damages against US Bank and Ocwen for charging the Plaintiff fees and costs charged to the mortgage loan account arising from the  purported foreclosure attempt.

d.     Legal fees from  US Bank Ocwen  pursuant to the provisions of  R.I.G.L § 9-1-45.

e.     All other just and proper relief.

ALTAGRACIA CAMARENA
By her Attorney

March 22, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND DEALING BY NONCOMPLIANCE WITH R.I.G.L 34-27-3.2 BY NOT OFFERING THE PLAINTIFF MEDIATION

47.     Paragraphs 1-46 are incorporated by reference.

48.     Ocwen on or about April 7, 2017 sent plaintiff   delinquency notice stating that she was delinquent on my mortgage as of April 2, 2013.

49.     However Ocwen began servicing this mortgage loan on November 3, 2013 and has no accurate records relating to the servicing of this loan prior to Ocwen beginning servicing.

50.     Ocwen has not credited her mortgage loan for payments she made to the prior servicer, Cenlar.

51.     Plaintiff's mortgage was a negative amortization loan, which allowed

her to make minimum payments of interest only, which were not calculated properly by any of the loan servicers for her mortgage loan.

52.     Plaintiff has not been given credit for the payment she made of $1566.64 on December 23, 2016.  This amount is greater than the minimum payment due of interest only  pursuant to this negative amortization mortgage.

53     The misapplication of payments by the prior servicers resulted in Plaintiff becoming  delinquent in this mortgage loan after May 16, 2013.

54.     Plaintiff has never been offered mediation for this mortgage loan pursuant to R.I.G.L 34-27-3.2(d), which provides

(d) The mortgagee shall, prior to initiation of foreclosure of real estate pursuant to § 34-27-4(b), provide to the mortgagor written notice at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices, that the mortgagee may not foreclose on the mortgaged property without first participating in a mediation conference. Notice addressed and delivered as provided in this section shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor.

55.     Ocwen has admitted in pleadings in Court cases and before the Rhode Island Department of Business Regulation that its records are inherently inaccurate.

56.     On December 19, 2014, Ocwen Loan Servicing, LLC and Ocwen Financial Corporation entered into a Consent Order with the New York Department of Financial Services. A copy is attached as Exhibit  E.

57.      This Consent Order contained the following findings of fact:
In 2010 and 2011 . . . The examination of Ocwen identified, amoung other thins, deficiencies in Ocwen's servicing platform and loss mitiation infrastructure, including (a) robo signing, (b) inaccurate affidavits and failure to property validate document execution process,(c) missing documentation, (d) wrongful foreclosure, (e) failure to properly maintain books and records, and (f) initiation of foreclosure actions without proper legal standing.

58.     As a result Ocwen entered into a Consent Order to remedy these problems. However in 2012 it was found that there was widespread noncompliance with the 2012 agreement including : " failing to demonstrate implementation of policies and procedures to verify borrower information on newly boarded accounts to accurately reflect the status and current balance of the borrower's account." Thus a new Consent Order was entered on December 5, 2012, attached as Exhibit  F.

59.     The compliance monitor for Ocwen thus found in paragraph 14, which is listed under the heading of:
**Inadequate and Ineffective Information Technology Systems and Personnel**
Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired companies, many of which are incompatible. . . As a result, Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors and maintains inaccurate records.

60.     In paragraph 17 the finding was made that Ocwen's core servicing functions rely on inadequate systems, which includes comments codes of more than 8400 codes, with duplication. In short Ocwen's record keeping was  deficient with no basis for being admitted into evidence. It is unreliable and trustworthy as established by this Consent Order, which in fact amended by the  March 27, 2017 Consent Order attached as Exhibit  G.

61.     On September 28, 2017, Ocwen entered into a Consent Order with the Rhode Island Department of Business Regulation. A copy is attached as Exhibit H.

62.     In this Consent Order, Ocwen agree not to board any new loans onto its REALServicing system at any time.

63.     It also agreed to transfer all residential mortgages on another electronic system so that Ocwen would be able to comply with applicable servicing standards.

64.     Ocwen thus is erroneously reporting that plaintiff is delinquent for the payment due on April 1, 2013.

65.     Plaintiff is entitled to mediation since she was not declared in default before May 16, 2013, due to the misapplication of my mortgage payments on the negative amortization mortgage and due to the failure to apply a payment made of $1566.64 on December 23, 2016.

66.     The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

67.     The mortgage contract incorporates the Rhode Island Statutory Power of Sale.

68.     US Bank  violated the covenant of good faith and dealing by mailing a Notice of Sale pursuant to R.I.G.L 34-27-3.2, and scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale  by sending a Notice of Sale without having first sent the plaintiff a mediation notice pursuant to R.I.G.L  34-27-3.2.

69.     Due to this failure to comply with the mediation statute, US Bank was not authorized to exercise the statutory power of sale and foreclose on the Plaintiff's mortgage.

70.     As a result of the improper and invalid attempt to exercise of the statutory power of sale and a purported  foreclosure sale due to the failure to comply with the mediation statute, Plaintiff's  mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other improper charges.

71.     Plaintiff lives in the property as her sole residence. She has also incurred emotional injuries and damages due to the improper attempted foreclosure  on her home without complying with the terms of the mortgage.

72.     Due to the attempted foreclosure, she has been worried about being losing her home and being evicted from her home, which has caused her to lose sleep and suffer emotional distress due to the actions of the Defendant.

73.     Plaintiff has  hired  an attorney, in regard to the improper action of Defendants, which sent her a Notice of Foreclosure sale  without having complied with the mediation statute.

74.     Plaintiff has incurred legal fees for the prosecution of this action as a result of the breach of contract by  US Bank, whose actions were a breach of the covenant of good faith and dealing and were willful, wanton and reckless, warranting the imposition of punitive damages.

75.     Pursuant to the provisions of R.I.G.L §9-1-45, Plaintiff is entitled to attorney fees for this breach of contract.

76.     There was no justiciable basis in law or fact for the exercise of the statutory power of sale without complying with the terms of the mortgage.

77.     Pursuant to the provisions of R.I.G.L §9-1-45, Plaintiff is entitled to attorney fees for this breach of contract.

78.     There was no justiciable basis in law or fact for the exercise of the statutory power of sale without complying with the terms of the mortgage.

WHEREFORE, Plaintiff demands the following relief:

   a.    Damages against US Bank and  Ocwen for failure to comply with R.I.G.L 34-27-3.2 and offer the Plaintiff mediation prior to mailing a Notice of Sale.

   b.    Damages against US Bank and  for legal fees and actual damages arising from the breach of contract.

   c.    Damages against US Bank and Ocwen for charging the Plaintiff fees and costs charged to the mortgage loan account arising from the  purported foreclosure attempt.

   d.    Legal fees from  US Bank Ocwen  pursuant to the provisions of  R.I.G.L § 9-1-45.

   e.    All other just and proper relief.

ALTAGRACIA CAMARENA
By her Attorney

March 22, 2018                              /s/ John B. Ennis
                                           JOHN B. ENNIS, ESQ. #2135
                                           1200 Reservoir Avenue
                                           Cranston, Rhode Island 02920
                                           (401) 943-9230
                                           Jbelaw75@gmail.com

## COUNT III
## INJUNCTIVE RELIEF

79.    Paragraphs 1- 78 are incorporated by reference.

80.    Plaintiff will be irreparably harmed if the foreclosure sale on March 26, 2018 occurs and her home is sold.

81.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

82.    Plaintiff lives in this property, as her principal  residence.

83.    These facts demonstrate that Plaintiff has a substantial likelihood of success.  Likewise a foreclosure of her property by a party not entitled to foreclose on the property will cause Plaintiff  irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants.

84.    The failure of the Defendants to comply with paragraph 22 of the mortgage and R.I.G.L 34-27-3.2 renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to send a Notice of Sale.  This demonstrates that Plaintiff has a substantial likelihood of success.

85.    Likewise a foreclosure of Plaintiff's  property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants.

86.    Such relief sought by Plaintiff will not disserve the public interest if imposed.

WHEREFORE, Plaintiff  demands that this Court:

a.    Grant a Preliminary Injunction Restraining and Enjoining US Bank, Ocwen  or any other entity acting on their behalf from conducting, advertising or continuing a  foreclosure  sale at 142-144 Unit Street, Providence, Rhode Island pending a hearing on a Permanent Injunction

b.    Grant a Permanent Injunction enjoining Deutsche Bank, Ocwen  or any other entity acting on their behalf from conducting, advertising or continuing a  foreclosure  sale at 142-144 Unit Street, Providence, Rhode Island  until  further Order of this Court.

c.    Award the Plaintiff actual damages and compensatory damages and legal fees and costs against the Defendants for scheduling a foreclosure without complying the  terms of the mortgage and without complying with R.I.G.L. 34-27-3.2.

d.    Grant all other just and proper relief.

ALTAGRACIA CAMARENA
By  her Attorney


March 22, 2018                    /s/ John B. Ennis
                                 JOHN B. ENNIS, ESQ. #2135
                                 1200 Reservoir Avenue
                                 Cranston, Rhode Island 02920
                                 (401) 943-9230
                                 Jbelaw75@gmail.com

## COUNT IV
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692

87.    Paragraphs 1-86 are incorporated by reference.

88.    Ocwen  is a debt collector as defined by 15 USC 1692 et seq.  since March 22, 2017  has committed several violations of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

89.    The primary business of Ocwen is the collection of debts.

90.    At the time Ocwen commenced servicing Plaintiff's mortgage loan account, Plaintiff was delinquent on her mortgage and Ocwen treated this mortgage loan as it were in default.

91.    Ocwen  has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

92.    Ocwen has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of his him  even though Ocwen and US Bank had  no present right to possession of the property claimed as collateral through an enforceable security interest.  Specifically, it committed the following violations in this regard:

      a.    On about January  18, 2018 Ocwen sent to Plaintiff, through its attorney Orlans a Notice of Intention to Foreclose.

      b.    Ocwen has caused publication of three foreclosure advertisements of the sale of Plaintiff's home.

93.    The facts alleged in this complaint establish that US Bank  does not have the present right to possession of the property claimed as collateral through an enforceable security interest.

94.    As alleged above, Ocwen violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take, namely sending a Notice of Sale

in violation of the terms of the mortgage and without complying with R.I.G.L 34-27-3.2.

95.     Ocwen  also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Ocwen  made false representations regarding the character and legal status of the debt, namely that it was owned by US Bank.

96.     OCWEN  also falsely stated the amount of the debt on three occasions when it sent payoff statements to the Plaintiff, through her attorney,  dated March 12, 2018.  February 28, 2018, October 31, 2017, October 25, 2017, October 6, 2017 and September 25, 2017. Each of these payoff statements included charges for improper fees and costs.

97.     These improper fees and costs included the following fees and costs on the March 12, 2018 payoff statement:

a.     $676.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.     $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.     $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.     $278.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this

property and rights under this Security Instrument. There is no basis for
these charges.

e.     $390.00 for a Trustee fee although there was not a trustee involved in
this matter.

f.     The Court fees of $25.00 when the matter has not been in Court.

g.     $57.50 for satisfaction cost, when the cost to record a mortgage
discharge in Rhode Island is $49.00.

h.     Civil Litigation fee of $675.00 when no civil litigation had been
commenced.

i.     Foreclosure fee of $1466.25 and foreclosure expense of $1162.18
since no default letter had been sent to the Plaintiff.

98.     These improper fees and costs included the following fees and costs
on the February 28, 2018 payoff statement:

a.     $676.00 for property inspection fees. These fees were neither
necessary nor reasonable. They were incurred by Ocwen's Corporate
affiliate, Altisource and were incurred solely to incur expenses to charge the
account. Ocwen knew that the property is occupied. Uniform covenant
number Nine of the mortgage provides that only fees that are reasonable or
appropriate to protect Lender's interest in this property and rights under this
Security Instrument. There is no basis for these charges.

b.     $939.00 for a title report fee and $275.00 for a title search fee. Such
fee is not reasonable as a search for Providence is done online and takes no
more than five minutes. It was also done merely to generate fees for a
Corporate affiliate, Altisource.

c.     $12.22 and $12.92 for statutory mailing. There is no basis for this fee,
since Ocwen never sent the consumer a default notice pursuant to the terms
of the mortgage.

d.     $278.00 for property valuation fees. These fees were neither
necessary nor reasonable. They were incurred by Ocwen's Corporate
affiliate, Altisource and were incurred solely to incur expenses to charge the

account. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.     $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.     The Court fees of $25.00 when the matter has not been in Court.

g.     $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.     Civil Litigation fee of $675.00 when no civil litigation had been commenced.

i.     Foreclosure fee of $1466.25 and foreclosure expense of $681.87 since no default letter had been sent to the Plaintiff.

99.     These improper fees and costs included the following fees and costs on the October 312, 2017 payoff statement:

a.     $618.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.     $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.     $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $681.87  since no default letter had been sent to the Plaintiff.

j.      $108.00 for projected property valuations Exp. A payoff letter cannot contain an estimated or projected expense.

k.      $6.58 for Projected Certified Mail expenses. A payoff letter cannot contain an estimated or projected expense.

100.   These improper fees and costs included the following fees and costs on the October 25, 2017 payoff statement:

a.      $618.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

j.      $6.58 for Projected Certified Mail expenses. A payoff letter cannot contain an estimated or projected expense.

101.   These improper fees and costs included the following fees and costs on the October 6, 2017 payoff statement:

a.      $603.50 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the

account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

 h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

j.      $6.58 for Projected Certified Mail expenses. A payoff letter cannot contain an estimated or projected expense.

102.   These improper fees and costs included the following fees and costs on the September 27, 2017 payoff statement:

a.      $589.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

 h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

103.    These improper fees and costs included the following fees and costs on the September 25, 2017 payoff statement:

a.      $589.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.     Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.     Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

104.   Ocwen in all of the payoff statements reflected a payment made by the Plaintiff in the amount of $1566.00, which has been held  in suspense for more than one year with no application to principal, interest or escrow.  As a result the failure to apply this payment properly has caused each amount of principal, interest and escrow to be improperly calculated.

105.   On each payoff statement, Ocwen indicated that late charges of $526.00 were outstanding.  However this amount is incorrect due to the fact that pursuant to the terms of the mortgage, late charges could not be paid until the mortgage was current.  The amount of the monthly late fees were $90.04.  To have late fees of $526.00 outstanding would indicate that the loan was less than six months in arrears.  This late fee balance of $526.00 indicates that Ocwen has been paid late fees from payments of principal, interest and escrow in the amount of at least $4830.00.

106.    Ocwen included all these improper fees in the periodic monthly statements sent to the Plaintiff since March 22, 2017. Thus it falsely stated the amount of the debt in each periodic statement sent since March 22, 2017.

107.   All the actions of Ocwen  alleged in this complaint were designed to compel the Plaintiff to pay monies to Ocwen nd US Bank,  individually and through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of her home unless he made such a payment to Ocwen, through its attorney on behalf of  the  entity, which claimed to own the  note.

108.   The Plaintiff  has incurred  actual damages as a result of the violations of the FDCPA:

          a.     Plaintiff has incurred costs for gasoline to visit her attorney on at least eight occasions, driving to her  attorney's office for round trips totaling more than  10.8  miles. The IRS standard mileage allowance provides for .56 per mile.

b.      Plaintiff  has used her cell phone to call and receive calls
from his attorney. These calls are charged to her pursuant to his
cell phone usage and monthly fees.

c.      Plaintiff  has used electricity to recharge her cell phone
for calls when she spoke with her attorney.

d.      She has incurred attorney fees and costs for the
prosecution of this action.

e.      She has suffered emotional damages for embarrassment
and humiliation by the advertising of a foreclosure of her home.

f.      Her mortgage loan account has been charged
unreasonable fees and costs for uncorroborated and
unreasonable and unnecessary property inspections and
improper legal fees and costs. Such costs have rendered a
modification of the mortgage loan more expensive to the
Plaintiff

g.      Her fee agreement with her attorney provides for
payment of legal fees for this action.

109.   As a result of the above described acts of Ocwen, it  is liable to the
Plaintiff for actual damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands that Judgment be entered against

Ocwen for the following relief:

A.      Judgment against Ocwen for actual damages, and statutory
damages of $1,000.00 for each violation of the FDCPA.

B.      For all other just and proper relief.

C.      Judgment for legal fees and costs for the prosecution of this
action.

ALTAGRACIA CAMARENA
By her Attorney

March 22, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT V

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY DEUTSCHE BANK'S FAILURE TO SEND THE PLAINTIFF AN ACCURATE MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

110.   Paragraphs 1-109 are incorporated by reference.

111.   This is an action for damages brought by the Plaintiff, who is a consumer, for Deutsche Bank's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

112   Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's failure to send the Plaintiff accurate monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

113.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements. 15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00. Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

114.   The Defendant, Ocwen is a limited liability company , which services residential mortgage loans.  It is the servicer of the mortgage loan, which is the subject of this complaint

115.   US  Bank as Trustee claims to be the owner of the mortgage note and mortgage loan.

116    The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

117.   Plaintiff has not been sent a monthly statement each month which was compliance with 12 C.F.R. 1026.41 since March 22, 2017.

118.   Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor was required to send the Plaintiff a monthly mortgage statement that provides the following information:

(**d**)  *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:

(**1**)  *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:

(**i**)  The payment due date;

(**ii**)  The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and

(**iii**)  The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.

(**2**)  *Explanation of amount due.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

(**i**)  The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;

(**ii**)  The total sum of any fees or charges imposed since the last statement; and

(**iii**)  Any payment amount past due.

(**3**)  *Past Payment Breakdown.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)**  The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)**  The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.*  A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.*  If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.*  A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.*  The following information:

**(i)**  The amount of the outstanding principal balance;

**(ii)**  The current interest rate in effect for the mortgage loan;

**(iii)**  The date after which the interest rate may next change;

**(iv)**  The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

**(v)**  The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.*  If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

**(i)**  The date on which the consumer became delinquent;

**(ii)**  A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

**(iii)**  An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

**(iv)**  A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

**(v)**  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

**(vi)**  The total payment amount needed to bring the account current; and

**(vii)**  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

119.   None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since  March 22, 2017.

120.   The Plaintiff has been charged improper fees and costs which have been included on each of her periodic monthly statements since March 22, 2017, which have been charged to her mortgage loan account. These fees include the fees previously referenced in Count II of this complaint:

a.      $589.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

121.   Ocwen in all of the periodic statements reflected a payment made by the Plaintiff in the amount of $1566.00, which has been held  in suspense for more than one year with no application to principal, interest or escrow.  As a result the failure to apply this payment properly has caused each amount of principal, interest and escrow to be improperly calculated.

122.   On each periodic statement, Ocwen indicated that late charges of $526.00 were outstanding.  However this amount is incorrect due to the fact that pursuant to the terms of the mortgage, late charges could not be paid until the mortgage was current.  The amount of the monthly late fees were $90.04.  To have late fees of $526.00 outstanding would indicate that the loan was less than six months in arrears.  This late fee balance of $526.00 indicates that Ocwen has been paid late fees from payments of principal, interest and escrow in the amount of at least $4830.00.

123.   Each monthly statement since March 22, 2017 included the improper fees alleged in this complaint and also included attorney fees for an attempted foreclosure sale noticed by Ocwen's  attorney after  without

having sent Plaintiff a Default Notice as required by the provisions of
R.I.G.L. 34-27-3.2.

124.   As a result of this failure to comply with 12 C.F.R. 1026.41 and
TILA, Defendant, US Bank  is liable for actual damages and statutory
damages of up to $4,000.00 for each of the  statements, which were sent to
the Plaintiff since March 22, 2018 and were not accurate and not in
conformity with 12 C.F.R. 1026.41 and TILA and any future statements sent
to the Plaintiff.

125.   The Plaintiff has incurred actual damages, costs and legal fees in
regard to this action:

     a.     She has incurred costs for gasoline to visit her attorney on at
least eight occasions, driving to her attorney's office for a round
trip totaling  10.8 miles.  The IRS standard mileage allowance
provides for .56 per mile.

     b.     She has incurred postage costs, copying costs and stationary
and envelope costs for transmission to the Defendant.

     c.     Her mortgage loan account has been charged additional fees
and costs, which raise the cost of any possible loan
modification.

     d.     She has incurred attorney fees and costs for the prosecution of
this action. Her fee agreement with her attorney provides that
she will be responsible for legal fees expenses incurred in
regard to this action.

     e.     Her mortgage loan account has not been applied properly for
the $1566.00 payment in held in suspense.

WHERFORE, Plaintiff demands Judgment against US Bank     for
statutory damages of at least $4,000.00, for each failure to send a monthly
mortgage statement in conformity with TILA since March 22, 2017 plus
actual damages, plus attorney fees and costs and all other just and proper
relief.

ALTAGRACIA CAMARENA
March 22, 2018                    By her Attorney


/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT VI

## MISREPRESENTATION

126.   Paragraphs 1-26 are incorporated by reference.

127.   Plaintiff submitted a loss mitigation application for a loan modification pursuant to 12 CFR 1024.41.

128.   On or about September 9, 2016 Ocwen sent a denial letter for a loan modification to the Plaintiff.

129.   In this denial letter, Ocwen stated the following:

Ocwen denied a loan modification in 2016 for HAMP Tier 1, HAMP Tier, 2 Shared Appreciation Modification ("SAM") and Proprietary loan modifications programs stating that the owner of the consumer's mortgage loan limits the number of modifications that are allowed to be modified by the ratings agencies for  a HAMP Tier 1 modification, a HAMP Tier 2 modification, a Shared Appreciation Modification Program and a Proprietary Modification Program.

130.   It explained in a letter to my attorney that:

The number of loans allowed to be modified by rating agencies and unfortunately, the modification maximum has been reached and we are unable to modify the loan.

131.   Ocwen also stated erroneously in this letter:

There is a limit to how many loans within that group that are allowed to be modified. The number of loans allowed to be modified was determined by rating agencies and we are unable to modify the loan.

131.  A copy of a portion of  the Wells Fargo Bank, N.A. monthly reporting to this Trust for August, 2016, September 2016 , October, 2016 and November 2016, indicates that loans have been modified since September 19, 2016.  These documents indicate that as of August 26, 2016, there had been 43 loans modified within the past twelve months and 628 total loans modified. As of September 26, 2016, 4 loans were modified within the current cycle. As of October 26, 2016, there were 45 loans modified within the past twelve months and 631 total loan modified, with 7 loans modified within the current cycle.   As of November 25, 2016, there were 50 loans modified within the past twelve month, with 7 loans modified within the current cycle.

132. In another response dated December 12, 2016, Ocwen again stated:

There is a limit to how many loans within that group that are allowed to be modified. The number of loans allowed to be modified was determined by rating agencies and we are unable to modify the loan.

133. Copies of these documents are attached as Exhibit  I.

134.  These statements by Ocwen were materially false and constituted misrepresentations of fact, namely that the trust for which US Bank was the trustee could not modify the Plaintiff's loan due to rating agency limitations and investor limitations, which did not allow it to modify any additional loans.
135.   In fact, this Trust did in fact provide additional modifications to mortgagors after September 9, 2016.

136.  As a result of this false statement of Ocwen regarding the ability of the trust to offer any additional  modifications, Plaintiff was unable to obtain a Making Home Affordable Modification ("HAMP") for which she was eligible.

137.   The HAMP modification program was no longer in effect after December 31, 2016.

138.   This modification program offered consumers principal reduction or forebearance, which terms were beneficial to her for lower interest rates and lower monthly payments.

139.   The alleged principal balance of the Plaintiff's mortgage is $300,084.87 and the total amount allegedly due on this mortgage is $404,929.93 as of March 12, 2018.

140.   The assessed value of the Plaintiff's home is $144,700.00.

141.   The Plaintiff has incurred damages due to the false assertion by Ocwen that  she was not eligible for a HAMP or any modification due to investor restrictions on additional modifications.

142.   As a result the Plaintiff has incurred damages on not being able to obtain a HAMP modification. The program in effect in 2016 provided for interest on a reduced principal balance of 2% for five years along with 3% for one year, 4% for one year and approximately 4% for the life of the loan.

143.   The failure to consider the Plaintiff for such a modification caused her actual damages for the next forty years for a HAMP modification at a reduced interest rate, due to the misrepresentations of Ocwen.

144.   The Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore the Plaintiff demands Judgment for actual damages, legal fees and costs and all other just and proper relief against Ocwen.


                                          ALTAGRACIA CAMARENA
March 22, 2018                            By her Attorney


                                          /s/ John B. Ennis
                                          JOHN B. ENNIS, ESQ. #2135
                                          1200 Reservoir Avenue
                                          Cranston, Rhode Island 02920
                                          (401) 943-9230
                                          Jbelaw75@gmail.com

**COUNT VII**

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY US BANK'S FAILURE TO SEND THE PLAINTIFF  ACCURATE PAYOFF STATEMENTS PURSUANT TO THE PROVISIONS OF  15 U.S.C. 1639**

145.   Paragraphs 1-144 are incorporated by reference.

146.   This is an action for damages brought by the Plaintiff, who is a consumer,  for us Bank's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

147.   Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's  transmission, by its loan servicer Ocwen to the Plaintiff of seven inaccurate payoff statements to the Plaintiff, through her attorney, dated March 12, 2018,  February 28, 2018, October 31, 2017, October 25, 2017, October 6, 2017, September 27, 2017 and d September 25, 2017inaccurate payoff statement in violation of 15 U.S.C. § 1639.

148.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for providing an inaccurate payoff statement to the borrower.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

149.   The Defendant, Ocwen Loan Servicing, LLC is a limited liability company that services residential mortgage loans.  Ocwen claims to be the servicer of the mortgage loan, which is the subject of this complaint

150.   US Bank claims to be the owner of the mortgage note and mortgage loan.

151.    The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

152.    On February 28, 2018, Ocwen on behalf of US Bank transmitted to the Plaintiff's attorney a  payoff statement, which was inaccurate due to the following  improper fees and charges.

a.       $676.00 for property inspection fees.    These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.       $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.       $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.       $278.00 for property valuation fees.    These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.       $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.       The Court fees of $25.00 when the matter has not been in Court.

g.       $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

 h.      Civil Litigation fee of $675.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $1466.25 and foreclosure expense of $1162.18 since no default letter had been sent to the Plaintiff.

153.    These improper fees and costs included the following fees and costs on the February 28, 2018 payoff statement:

a.      $676.00 for property inspection fees.    These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $278.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.      Civil Litigation fee of $675.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $1466.25 and foreclosure expense of $681.87 since no default letter had been sent to the Plaintiff.

154.    On October 31, 2017, Ocwen on behalf of US Bank transmitted to the Plaintiff's attorney a payoff statement, which was inaccurate due to the following improper fees and charges:

a.      $618.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $681.87  since no default letter had been sent to the Plaintiff.

j.      $108.00 for projected property valuations Exp. A payoff letter cannot contain an estimated or projected expense.

k.      $6.58 for Projected Certified Mail expenses. A payoff letter cannot contain an estimated or projected expense.

155.    On October 25, 2017, Ocwen on behalf of US Bank transmitted to the Plaintiff's attorney a payoff statement, which was inaccurate due to the following  improper fees and charges:

a.      $618.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only

fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

j.      $6.58 for Projected Certified Mail expenses. A payoff letter cannot contain an estimated or projected expense.

156.   On October 6, 2017, Ocwen on behalf of US Bank transmitted to the Plaintiff's attorney a payoff statement, which was inaccurate due to the following  improper fees and charges:

a.      $603.50 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.     $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.     $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.     $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.     The Court fees of $25.00 when the matter has not been in Court.

g.     $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.     Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.     Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

j.     $6.58 for Projected Certified Mail expenses. A payoff letter cannot contain an estimated or projected expense.

157.   On September 27, 2017, Ocwen on behalf of US Bank transmitted to the Plaintiff's attorney a payoff statement, which was inaccurate due to the following  improper fees and charges:

a.     $589.00 for property inspection fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

158.   On September 25, 2017, Ocwen on behalf of US Bank transmitted to the Plaintiff's attorney a payoff statement, which was inaccurate due to the following  improper fees and charges:

a.      $589.00 for property inspection fees.    These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account. Ocwen knew that the property is occupied. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or

appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

b.      $939.00 for a title report fee and $275.00 for a title search fee. Such fee is not reasonable as a search for Providence is done online and takes no more than five minutes.  It was also done merely to generate fees for a Corporate affiliate, Altisource.

c.      $12.22 and $12.92  for statutory mailing. There is no basis for this fee, since Ocwen never sent the consumer a default notice pursuant to the terms of the mortgage.

d.      $193.00 for property valuation fees.   These fees were neither necessary nor reasonable.  They were incurred by Ocwen's Corporate affiliate, Altisource and were incurred solely to incur expenses to charge the account.. Uniform covenant number Nine of the mortgage provides that only fees that are reasonable or appropriate to protect Lender's interest in this property and rights under this Security Instrument.  There is no basis for these charges.

e.      $390.00 for a Trustee fee although there was not a trustee involved in this matter.

f.      The Court fees of $25.00 when the matter has not been in Court.

g.      $57.50 for satisfaction cost, when the cost to record a mortgage discharge in Rhode Island is $49.00.

 h.      Civil Litigation fee of $645.00 when no civil litigation had been commenced.

i.      Foreclosure fee of $517.50  and foreclosure expense of $10.52  since no default letter had been sent to the Plaintiff.

159    As a result of this failure to comply with TILA, Defendant,  Bank  is liable for actual damages and statutory damages of up to $4,000.00 for this inaccurate payoff statement which was sent to the Plaintiff.

160.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

a.   She has incurred costs for gasoline to visit her attorney on at least eight occasions, driving to her attorney's office for a round trip totaling  10.8 miles.  The IRS standard mileage allowance provides for .56 per mile.

b.   She has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

c.   Her mortgage loan account has been charged additional fees and costs, which raise the cost of any possible loan modification.

d.   She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

e.   Her mortgage loan account has not been applied properly for the $1566.00 payment in held in suspense.

WHERFORE, Plaintiff demands Judgment against US Bank for

statutory damages of at least $4,000.00 for each TILA violation for sending

each inaccurate payoff statement in violation of  TILA plus actual

damages,  attorney fees and costs and all other just and proper relief.

March 22, 2018

ALTAGRACIA CAMARENA
By herAttorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT VIII

## VIOLATIONS OF REGULATION X

161.   Paragraphs 1-160 are incorporated by reference.

162.   This is an action for actual and statutory damages filed by the Plaintiff for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB).  This is also an action for actual and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.  ("TILA").

163.   This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

164.   Ocwen performs its mortgage loan servicing business under the name of Ocwen and is the current servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

165.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

166    Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z)(February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014.

167.   The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

168    The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small

servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

169.   The Plaintiff is asserting a claim for relief against the Defendant for breaches of the specific Rules under Regulation X as set forth below.  The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

170.   On or about December 20, 2016, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

171.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number  9414810200829253378705.  The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

172.   The Notice was received by the Defendant on December 24, 2016.

173.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than February 8, 2017.

174.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had denied the Plaintiff a  loan modification due to investor restrictions on the number of modifications available.  This Notice of Error asserted the following error:

The consumer in this case believes that you committed an error in your response to a Notice of Error dated September 19, 2016  by denying the consumer for HAMP Tier 1, HAMP Tier, 2 Shared Appreciation Modification ("SAM") and Proprietary. You did not consider all eligibility factors  when determining the eligibility of the consumer for HAMP Tier 1,

HAMP Tier 2, Shared Appreciation Modification Program and Proprietary Program.

Please provide all the written guidelines for eligibility of the consumer for the following Loss Mitigation Options:
HAMP Tier 1, HAMP Tier 2, Shared Appreciation Modification Program and Proprietary Program.

You committed error when you stated that the owner of the consumer's mortgage loan limits the number of modifications that are allowed to be modified by the ratings agencies for  a HAMP Tier 1 modification.

You committed error when you stated that the owner of the consumer's mortgage loan limits the number of modifications that are allowed to be modified by the ratings agencies for  a HAMP Tier 2 modification.

You committed error when you stated that the owner of the consumer's mortgage loan limits the number of modifications that are allowed to be modified by the ratings agencies for  a Shared Appreciation Modification Program.

You committed error when you stated that the owner of the consumer's mortgage loan limits the number of modifications that are allowed to be modified by the ratings agencies for  a Proprietary Modification Program.

You committed error when you did not provide all the data points and factors which are required to be considered for each modification for  which you contend that the consumer is not eligible.
You committed error when you did not provide an NPV test for the HAMP modification.

When you responded to the Notice of Error on October 11, 2016 you committed error by stating that:

The number of loans allowed to be modified by rating agencies and unfortunately, the modification maximum has been reached and we are unable to modify the loan.

However I have attached a portion of  the Wells Fargo Bank, N.A. monthly reporting to this Trust for August, 2016, September 2016 , October, 2016

and November 2016, which indicates that loans have been modified since September 19, 2016.  These documents indicate that as of August 26, 2016, there had been 43 loans modified within the past twelve months and 628 total loans modified. As of September 26, 2016, 4 loans were modified within the current cycle. As of October 26, 2016, there were 45 loans modified within the past twelve months and 631 total loan modified, with 7 loans modified within the current cycle.   As of November 25, 2015, there were 50 loans modified within the past twelve month, with 7 loans modified within the current cycle.

Thus you have  committed error by stating that:

 There is a limit to how many loans within that group that are allowed to be modified. The number of loans allowed to be modified was determined by rating agencies and we are unable to modify the loan.

The records of Wells Fargo, the master servicer for this trust indicates that you have committed error by making this statement regarding the limits on the number of loans that can be modified.

In another response dated December 12, 2016, you repeated this error by once again stating:

There is a limit to how many loans within that group that are allowed to be modified. The number of loans allowed to be modified was determined by rating agencies and we are unable to modify the loan.

The error is compounded by your stating that the consumer was offered a streamlined modification, without any HAMP Tier 1 or Tier 2 consideration or any other modification option. If there was a limit on the number of loans that could be modified, a streamlined modification without any consideration of the income of the consumer or the value of the property, could not have been offered.

175.   Defendant did not respond within thirty business days. It did not respond at all and never corrected this error.

176.   The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

177.   As a result of this lack of compliance by the Defendant, Ocwen is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

178.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She has incurred costs for gasoline to visit his attorney on at least five occasions, driving to her attorney's office for a round trip totaling 10.8  miles.  The IRS standard mileage allowance provides for .56 per mile.

b.      She has had to incur the expense of using electricity to recharge her cell phone to call and receive calls from his attorney.

c.      She has incurred postage and copying costs in transmitting this Notice of Error.

d.      She has incurred actual damages in being denied for HAMP modifications as alleged in this complaint.

e.      She has incurred attorney fees and costs for the prosecution of this action. Hers fee agreement with his attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

179.   On or about September 20, 2016, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

180.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number  94148102008811518075 96.  The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

181.   The Notice was received by the Defendant on September 24, 2016.

182.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had denied the Plaintiff a loan modification due to investor limitations.

183.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than November 1, 2016.

184.   The Defendant never responded to this Notice of Error, nor did it correct the error.

185.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      She has incurred costs for gasoline to visit his attorney on at least five occasions, driving to her attorney's office for a round trip totaling 10.8  miles.  The IRS standard mileage allowance provides for .56 per mile.

b.      She has had to incur the expense of using electricity to recharge her cell phone to call and receive calls from his attorney.

c.      She has incurred postage and copying costs in transmitting this Notice of Error.

d.      She has incurred actual damages in being denied for HAMP modifications as alleged in this complaint.

e.      She has incurred attorney fees and costs for the prosecution of this action. Hers fee agreement with his attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

186.   The Plaintiff has demonstrated through the failure of the Defendant to correct any of the Notices of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error.

187.   The failure of the Defendant to correct the Notices of Error in this case establish that the pattern and practice of Ocwen to ignore this type of Regulation X Notice of Error relating to loss mitigation.


WHEREFORE, Plaintiff demands judgment for actual damages plus

statutory damages of $2,000.00 per violation for each of the enumerated

regulation X  violations,  plus attorney fees and costs.


                                        ALTAGRACIA CAMARENA
                                        By her Attorney

March 22, 2018                          /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, RI 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com


Plaintiff demands a Trial by Jury